Randall A. GODWIN and Betty J. Godwin,
Plaintiffs,

v.

CONTINENTAL INSURANCE COMPA-
NY, a corporation of the State of
New York, Defendant.

Civ. A. No. 3037.

United States District Court
D. Delaware.

Oct. 31, 1969.

---

Jacob Balick, Balick & Yucht, Wil-
mington, Del., for plaintiffs.

William Prickett, Prickett, Ward, Burt
& Sanders, Wilmington, Del., for defend-
ant.

## OPINION

LATCHUM, District Judge.

This action, commenced in the Supe-
rior Court of the State of Delaware on

May 12, 1965 by Randall A. Godwin[1] and his wife, Betty Godwin, seeks to recover from Continental Insurance Company (the defendant) the sum of $34,506.71 plus interest, attorney's fees, costs and punitive damages based on an alleged, loss sustained under a standard fire and extended coverage policy issued by the defendant to cover plaintiffs' motel property located at Towers Shore, just north of Bethany Beach, Delaware. Because the plaintiffs were Delaware citizens, the defendant was a New York corporation and the amount in controversy exceeded $10,000 exclusive of interest and costs, defendant elected to remove the case to this Court on June 3, 1965 pursuant to 28 U.S.C.A. § 1441.

The defendant has moved for summary judgment on the ground that the one-year limitation of action clause contained in the policy bars the present suit.[2] The background dealings between the parties concerning the policy in question and the claim made thereunder may be summarized as follows:

The plaintiffs insured their motel property with defendant for a 5-year term on February 5, 1961 through defendant's local agent, C. L. McCabe & Son, Inc. The motel was seriously damaged by storms which occurred on March 6, 1962 and June 24, 1962. The claim in the instant suit, however, relates only to damage allegedly caused by the windstorm of June 24, 1962.

Within a half-hour after the June 24th storm, the plaintiff had a friend telephone Clay D. McCabe, an associate of defendant's local agent, and report the storm damages. The following day Clay McCabe and Mr. L. W. Bothum of the General Adjustment Bureau[3] visited the motel to observe the damages. While at the site McCabe and Bothum had the plaintiff sign a blank proof of loss form, stating that it could be completed and filled in later. McCabe and Bothum also told the plaintiff to clean up the property, salvage what he could, repair the damages and send the bills to McCabe. The plaintiff proceeded with the repairs which continued during the ensuing summer and fall months. Upon receiving all of the repair bills, plaintiff submitted them to the General Adjustment Bureau in December, 1962. In January, 1963, after receipt of the bills, A. E. Strehler and George Bahen of the General Adjustment Bureau called at the motel to investigate the claim. They went over the site with John R. Wilkins, a contractor, whom they had retained to make an independent estimate of the storm damages.

---

1. For convenience Randall A. Godwin will be referred to as "plaintiff."

2. The original policy in question (Continental Insurance Company Policy No. 276, issued to plaintiffs on February 5, 1961 for a five year period ending February 5, 1966) was neither produced nor exhibited to this Court. However, uncontradicted affidavits were filed which show that one of the terms of the policy provided, in part, as follows: *"No suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity unless * * * commenced within twelve months next after the inception of the loss."* The quoted provision was stated to be a standard provision included in all fire and extended coverage policies issued by defendant in Delaware in 1961 as permitted by the regulations of the State Insurance Commissioner. These affidavits were made, pursuant to Rule 56(e), F.R.Civ. P., on the personal knowledge of the af-

fiants who would be competent to testify to the matters stated therein and clearly show that the original policy cannot now be found after diligent search therefor, is not in the possession of plaintiffs, the defendant or plaintiffs' mortgagee, Millsboro Trust Company, and was most likely destroyed after its expiration date without any fraudulent purpose. Therefore, I find that a proper foundation has been laid for the admission of secondary evidence, that the uncontradicted statements of the affiants, establishing the specific terms of the limitation clause in said policy, would be admissible in evidence, Rule 56(e), F.R.Civ.P.; McCormick On Evidence §§ 201–203; 32A C.J.S. Evidence §§ 777, 785, 792(2), 837, and that the policy contained the above-quoted limitation provision.

3. Defendant was a client of General Adjustment Bureau, a company which investigates losses on behalf of its insurance company clients.

Again in April, 1963, Strehler and Bahen returned to the motel to investigate the damage to the motel furnishings claimed to have been caused by the June 24, 1962 windstorm. Plaintiff took them to a trash dump and "pulled out stoves and refrigerators and beds" for their inspection and also showed them other furnishings stored in a warehouse. The process of adjusting in 1963 was further delayed because of the subsequent illness of Mr. Wilkins and the death of Mr. Bahen.

The plaintiff, not understanding why his claim had not been paid, contacted the General Adjustment Bureau sometime around the end of May or the first of June, 1963 and upon learning that Mr. Bahen had died became concerned about the long delay. It was at this point, on June 4, 1963, that plaintiff went to Baltimore and retained a lawyer, Claude F. McKenzie, to represent him in connection with his claim against Continental. McKenzie, in plaintiff's presence, telephoned Bryce L. McCabe, another associate of defendant's local agent, and asked why plaintiff's loss had not been paid. McCabe said that the plaintiff had not submitted a proper proof of loss and that it would be necessary for plaintiff to resubmit a detailed breakdown of the damage to each building. Since the actual repair bills had been sent to the General Adjustment Bureau in December, 1962, it was necessary to retrieve them to permit the plaintiff to make a building-by-building breakdown of the losses. Accordly, McKenzie then telephoned Mr. J. K. Schmid of Continental in Baltimore and arranged to have the General Adjustment Bureau return the bills to the plaintiff. Schmid also told McKenzie that in order to settle the losses a proper proof of loss would have to be filed. McKenzie received the impression from his conversation with Schmid that there would be no problem in adjusting the building losses but that there was a problem with respect to the furniture losses.

McKenzie wrote to Schmid under date of June 5, 1963 confirming his arrangement about the bills and Schmid replied by letter on June 6th indicating that the bills had been returned to Bryce McCabe for plaintiff's use. Schmid's letter concluded by saying that he would be happy to discuss the claim with McKenzie when the proof of loss had been completed.

The repair bills were mailed to C. L. McCabe & Son, Inc. in Selbyville, Delaware and received by the plaintiff on June 19, 1963. Sometime between June 10th and 19th, Schmid telephoned McKenzie and arranged an appointment for June 21st or 22d for the purpose of discussing settlement. This meeting was cancelled by Schmid and McKenzie so notified the plaintiffs about June 19, 1963.

On June 22, 1963, McKenzie, while visiting plaintiffs' motel, asked to see the insurance policy. He was told that the plaintiffs never had a copy of the policy [4] but did have a "memorandum of insurance." After examining the memorandum of insurance and finding no limitation of action clause therein, he concluded that the Delaware statutory three-year period for filing suit applied and so advised the plaintiffs.

On June 25, 1963, McKenzie again spoke with Schmid and advised that he had the breakdown of the repair bills which he had brought back with him after his weekend visit with the plaintiffs. Schmid told him he would contact Strehler of General Adjustment Bureau and arrange a date to discuss settlement of the claim.

On June 28, 1963, Schmid and Strehler met in McKenzie's office with McKenzie and the plaintiff. Schmid and Strehler first asked the plaintiff to leave the room and then asked McKenzie whether he had filed suit. When McKenzie answered "no", he was informed that the policy contained a one-year limitation provision and that the time for filing

---

4. McKenzie admitted that he realized the insurance policy would normally be held by the mortgagee and that the owners generally are issued only a memorandum of insurance.

suit had expired on June 24, 1963. McKenzie then told plaintiff that defendant had denied his claim because suit had not been brought within one year from the date of the loss and advised plaintiff[5] "to return to Delaware and file a suit."

On July 5, 1963, plaintiff consulted with H. Edward Maull, a Delaware attorney, and instructed him to file suit but instead of filing suit Maull requested the State Insurance Commissioner to investigate the defendant's practice of issuing a memorandum of insurance not identical with the insurance policy. When Maull had not filed suit by December, 1963, plaintiff retained Everett Warrington as his attorney. On Warrington's advice plaintiff signed a non-waiver agreement and negotiations toward a settlement commenced. In April, 1964, the defendant offered $9,830.08 in settlement of the claim. Warrington still not having filed suit, became seriously ill and suggested that plaintiff retain A. Dean Betts as his attorney. Plaintiff retained Betts "on his promise to file suit immediately." Plaintiff called Betts frequently during the fall and winter of 1964, forwarded the suit filing fee upon request, and was repeatedly assured that suit would be filed soon. In February, 1964, plaintiff learned that Betts had turned the matter over to another Delaware lawyer, James Sabo, who had also delayed filing suit. At this point plaintiff asked Paul R. Reed, another Delaware attorney, if he had time to file suit. Upon being assured that Reed had time and would file suit, plaintiff retained Reed who said he would study the file and contact plaintiff. Reed, without consulting plaintiff further, wrote him and recommended that plaintiff accept the defendant's previous settlement offer of $9,830.08. Plaintiff, believing that Reed was confusing the matter with another of plaintiff's claims, then retained his present counsel who brought suit in the state court on May 12, 1965. As previously stated, the defendant brought a timely petition of removal and the case was subsequently removed to this Court on June 3, 1965.

The defendant has moved for summary judgment contending that the one-year limitation clause of the policy bars the present action.[6] It is uncontroverted that the instant suit was not commenced until May 12, 1965, more than 2 years and 10 months after the loss occurred, and more than a year and 10 months after the alleged expiration of the one-year limitation period.

In order to grant summary judgment the Court must find that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. The plaintiff resists the application of the one-year limitation provision in this suit for two main reasons: first, for the failure of the "Memorandum of Insurance" to include the one-year limitation clause; and second, for the alleged bad faith of the defendant's agents in "lulling" the plaintiffs into a false sense of accommodation during the one-year period between June 24, 1962, the date of the loss, and June 28, 1963, when liability was denied. While the parties differ as to the inferences and conclusions to be drawn from the conduct of the defendant prior to June 28, 1963, the basic issue here is whether any genuine issue of material fact is in dispute. On the view which the Court takes of the cause, any factual dispute concerning the failure to include the limitation clause in the memorandum of insurance, or concerning the conduct of defendant's agents before June 28, 1963 is not material to the determination of the present motion.

It is undisputed that on June 28, 1963, defendant's agents informed plaintiff's attorney McKenzie that the policy

---

5. McKenzie at that time refused to permit the plaintiff to sign a non-waiver agreement as suggested by Schmid.

6. It is established by Delaware law and conceded by both parties that a one-year limitation of action clause in an insurance policy is reasonable and binding upon the insured. Murray v. Lititz Mutual Insurance Co., 5 Terry 447, 61 A.2d 409 (1948).

in question contained a one-year limitation clause and that because suit had not been instituted within one year of the date of loss, the defendant had decided to reject plaintiffs' claim. In the light of this undisputed fact, this Court finds the two grounds on which plaintiff challenges the applicability of the one-year limitation period to be unpersuasive. As to the first ground of plaintiff's challenge —the failure to include the limitation provision in the memorandum of insurance—it is established that before June 24, 1963 plaintiff had been represented by an attorney, Claude F. McKenzie. On June 22, 1963, McKenzie examined the memorandum of insurance which contained a warning clearly indicating that it was not a full statement of the insurance contract between the parties.[7] McKenzie later admitted that he noted this warning at the time he read the memorandum.

██ Assuming, however, for the purposes of this motion that the failure to include the limitation provision in the memorandum of insurance was misleading and therefore would have prevented the defendant from asserting the clause as a bar to any action commenced before June 28, 1963, this Court, nonetheless, concludes that such failure to include the limitation clause in the memorandum of insurance (and any factual dispute related to such failure) does not affect the determination of the present motion. Although it may be assumed that an estoppel to raise the defense as of June 28, 1963 could have been based on the failure to include the limitation provision in the memorandum of insurance, this defect was effectively cured by notice of the one-year limitation period which the plaintiffs and their attorney received from the defendant on June 28, 1963.

Thus, the one-year limitation period commenced to run, at least as of June 28, 1963, but as previously noted, suit was not filed until nearly two years later.

Plaintiffs' second ground for challenging the applicability of the one-year limitation clause is the allegedly misleading conduct of the defendant during the one-year period following the loss. Assuming such conduct was so inequitable as to estop the defendant from asserting the limitation period as of June 24, 1963, the question before the Court is whether any issue of fact relating to defendant's conduct before June 24, 1963, which would have justified an estoppel as of that date, is relevant to determining the present motion, when suit in fact was not brought until May 12, 1965, almost two years later.

The plaintiffs here apparently proceed on the theory that if there was any basis for an estoppel existing on June 24, 1963, the conduct and circumstances which would have justified an estoppel at that time should be held to bar the defendant completely and permanently from ever relying upon the limitation clause of the contract. This theory is an attempt to deal with the undisputed failure of plaintiffs to bring suit until nearly two years after notice of the limitation period and almost three years after the loss. Significantly, plaintiffs have not relied in any way on the defendant's conduct after June 28, 1963 in opposing the present summary judgment motion. Plaintiffs' contention that defendant's conduct before June 28, 1963 permanently bars defendant's reliance on the one-year limitation period is incorrect as a matter of law. This error stems from plaintiffs' failure to distinguish between the concepts of *waiver* and *estoppel*.

7. On the first page of the "Memorandum of Insurance" the following warning was printed in red ink and in large capital letters: THIS IS NOT A POLICY OF INSURANCE. IT IS A MEMORANDUM OF THE POLICY DESCRIBED HEREIN AT THE DATE OF ISSUE HEREOF AND IS FURNISED AS A MATTER OF INFORMATION ONLY WITH THE UNDERSTANDING THAT THE RIGHTS AND LIABILITIES OF THE PARTIES WILL BE GOVERNED BY THE ORIGINAL POLICY AS IT MAY BE LAWFULLY AMENDED BY ENDORSEMENT FROM TIME TO TIME.

■ Delaware case law,[8] applicable to this action, clearly recognizes the distinction between waiver and estoppel. In Nathan Miller, Inc. v. Northern Ins. Co., 3 Terry 523, 39 A.2d 23, 25 (1944), Chief Justice Layton defined waiver as "the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power. * * * In strictness, waiver is referable to the act or conduct of one party only. It depends on what one party intended to do, rather that upon what he induced his adversary to do, as in estoppel. * * * There may, therefore, be a waiver of an existing right apart from any element of estoppel."[9] Justice Layton indicated that to establish a waiver there must be a finding of a "conscious and voluntary abandonment of some right or privilege."[10] In contrast to waiver, estoppel "has a tortious quality, and is maintainable only where the conduct of one party has induced another to change his position for the worse, in which case the law vests the consequences upon him who is the author of the mischief by declaring an estoppel."[11]

■ In this case the record is clear there was no express waiver of the one-year limitation period by the defendant. Furthermore, while the Delaware cases recognize that a waiver can be established "by such conduct as clearly indicates an intention to renounce a known privilege or power" (Nathan Miller, Inc. v. Northern Ins. Co., supra, 39 A.2d at 25), in this case it must be emphasized that plaintiffs have in no way relied on the theory of waiver either in their brief or argument and have pointed to no facts which clearly indicate that the defendant intentionally waived its rights under the one-year limitation clause. On the contrary, plaintiffs have grounded their argument exclusively on the inequity of allowing the defendant to rely on the one-year limitation provision because of defendant's allegedly misleading conduct. Plaintiffs' failure to frame their argument before this Court in terms of waiver may possibly indicate plaintiffs' recognition that no basis for a waiver can be established. In any event, this Court, after an independent examination of the record in the light of the standard for establishing a waiver under Delaware law, finds no indication of any action by the defendant which suggests or even intimates an *intention* to renounce its rights under the one-year limitation clause.

The problem raised by the plaintiffs' confusion of the doctrine of waiver and estoppel was considered in Insurance Co. of North America v. Board of Education, 196 F.2d 901 (C.A.10, 1952). In that case, remarkably similar to the one at bar, the plaintiff had purchased a standard fire policy from the defendant insurance company. The policy, whose provisions were prescribed by statute in Oklahoma, contained a standard one-year limit on the time when an action could be brought on the policy.

The loss in question occurred on January 7, 1947. The action to recover on the policy was not commenced until August 25, 1949, more than two and one-half years after the loss was incurred. The trial court found that because the defendant had engaged in dilatory tactics, had continued to negotiate with the School Board for settlement of the claim until February, 1948 and had not denied liability until April, 1948, the School Board had been led to believe that the loss would be adjusted. The trial court thus concluded that the defendant's conduct was so inequitable as to deprive it of the defense that the action was barred by the one-year limitation provision.

8. This being a diversity suit with a non-federal issue for determination, state substantive law is applied. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

9. Cf. Jones v. Savin, 6 Boyce 68, 96 A. 756, 757 (1916): "A waiver is an intentional relinquishment of a known right or such conduct as warrants an inference of such intent."

10. 39 A.2d 23, 25.

11. Ibid.

The Court of Appeals accepted the trial court's finding of inequitable conduct "for the purpose of this opinion" and concluded that the insurance company could not base a defense on the plaintiff's failure to bring suit within one year *from the date of loss*. The Court went on to consider whether the initial inequitable conduct of the defendant constituted a complete bar to the assertion of the one-year limitation provision by the defendant. In ruling that the initial inequitable conduct of the insurance company did not completely nullify its right to insist upon the one-year limitation clause at some later point, the Court noted that the defendant had denied liability on April 28, 1948, and *after the denial of liability*, the plaintiff had a reasonable time in which to bring suit under the policy. Since the suit in that case was not commenced until more than a year after the denial of liability, the Court held the one-year limitation provision was fully applicable. Referring to the general rule in this regard, the Court stated at p. 904:

> "Most courts which have considered this question in a statutory fire insurance policy have held that conduct on the part of the insurance company in continuing and prolonging negotiations which deprived it of the right to insist that an action be brought within the statutory one year period of limitation written in the policy operates to suspend the running of the statute of limitations until denial of liability, after which the insured is given a reasonable time to commence suit."

To the same effect is Roumel v. Niagara Fire Insurance Co., 225 A.2d 658 (D.C.Appeals, 1967). There plaintiff sustained fire damages to his premises on May 20, 1962. Approximately five months later, the insurance company refused to proceed with an appraisal agreement. No action was taken by either party until May 18, 1965, nearly three years after the fire, at which time suit was brought. The policy contained a standard one-year limitation of action clause. In granting defendant's motion for summary judgment based on plaintiff's failure to bring suit within the contractual one-year period, the court found "without merit" the plaintiff's contention that a decision in defendant's favor would allow insurance companies "to avoid payment of claims by entering into prolonged negotiations and then withdrawing after the twelve-month limitation [had] passed." [12] The court said this contention could be simply answered "by holding in such a case that the insurer's conduct tolls the running of the contractual period of limitations," citing Insurance Co. of North America v. Board of Education, supra.

The present case must also be contrasted with Nathan Miller v. Northern Ins. Co., supra. In *Nathan Miller* the plaintiff claimed that defendant's examination of the damage and an offer of settlement constituted a waiver of the 60-day period for submitting proof of loss. The court stated: "A distinct recognition of liability of the company, made under such circumstances as reasonably to show that it is satisfied as to the loss, will amount to a waiver of formal notice and proofs or of defects therein." [13] Applying this princple to the facts before it in *Nathan Miller*, the court found that a valid waiver had been alleged.

In the present case, the defendant made an offer of settlement of $9,830.08 in April, 1964. Does this offer then raise any question as to the propriety of summary judgment for the defendant in this case? This Court is of the opinion that *Nathan Miller* and other Delaware cases relating to the timeliness of filing formal *proofs of loss* are distinguishable. First, it must be noted in the present action that plaintiffs on the advice of counsel signed a non-waiver agreement before the offer of settlement was made. Second, the plaintiffs have not suggested that defendant's settlement offer or any

12. 225 A.2d 658, 660.

13. 39 A.2d 23, 26.

other conduct of the defendant after June 28, 1963 deterred the plaintiffs from bringing suit or in any manner constituted a waiver as that term is defined under Delaware law. Rather, the record indicates a sustained effort on plaintiffs' part, after the offer of settlement was made, to convince their attorneys to file suit. The attempts of plaintiffs to persuade their various attorneys to bring suit have been set forth above. Particularly, it should be noted that *after* the defendant's offer of settlement in April, 1964, plaintiff retained A. Dean Betts "on Betts' promise to file suit immediately." The plaintiff also called Betts frequently during the fall and winter of 1964, forwarded the filing fee upon request and was repeatedly assured that suit would soon be filed. This evidence clearly negates any possible inference that the settlement offer played any part in deterring the plaintiffs from instituting suit.

Nor is GMC Realty Corp. v. Girard Fire & Marine Ins. Co., 8 Terry 216, 89 A.2d 857 (1952) applicable. In that case the plaintiff signed a non-waiver agreement after the expiration of the 60-day period for filing proof of loss. The court noted, however, that on more than one occasion after the non-waiver agreement was executed the defendant had offered to pay the amount of the lowest estimate of damage incurred in plaintiffs' fire loss. The important difference between *GMS Realty Corp.* and the present case is that in *GMS* the defendant, in spite of the non-waiver agreement, never raised any question concerning the failure to file a proof of loss until the action was commenced. In the present case, it is undisputed that the defendant advised the plaintiffs of the one-year limitation provision and denied liability on that ground long before the non-waiver agreement was signed. Therefore, the giving of notice of the existence of the limitation provision, coupled with the later signing of a non-waiver agreement by plaintiffs, on the advice of counsel, provide no basis for inferring an intentional relinquishment by the defendant of its right to rely on the one-year limitation provision.

■ Thus, this Court finds that the plaintiff was given effective notice of the one-year limitation provision on June 28, 1963 and any estoppel barring the defendant from asserting this defense expired at the latest, one year following receipt of such notice, absent evidence of conduct after the date of the notice which would further toll the running of the limitation period. The plaintiff has not pointed to, and the record upon close examination does not disclose, any evidence of this character. On the contrary, the record clearly shows that plaintiffs' delay in bringing suit after June 28, 1963 was not attributable to the defendant but was due solely to the plaintiffs' inability to persuade their own attorneys to act. Since suit was not commenced until May 12, 1965, more than a year and a half after notice of the limitation provision was given, this Court finds (a) there is no estoppel barring the defendant from raising the one-year limitation clause as a defense to this action and (b) there is no evidence of a waiver, i. e. an intentional relinquishment of its rights under that clause. The one-year limitation provision is validly interposed by the defendant, and under the undisputed facts of this case, provides a complete bar to plaintiffs' present action as a matter of law.

Accordingly, summary judgment will be entered in defendant's favor and the present action dismissed with prejudice.

Present order in accordance with this opinion.